**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND**
(Baltimore Division)

| | |
|---|---|
| In re<br><br>**8281 VENTURES, LLC**,<br><br>Debtor | Bankruptcy Case: 14-29538-NVA<br><br>Chapter 11 |

**THE UNITED STATES TRUSTEE'S
MOTION TO CONVERT TO CHAPTER 7,
DISMISS OR FOR APPOINTMENT OF A TRUSTEE**

Judy A. Robbins, the United States Trustee for Region Four, which includes the District of Maryland, Baltimore Division (the "U.S. Trustee"), in furtherance of the administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a), respectfully requests that this Court enter an Order, pursuant to 11 U.S.C. § 1112(b), converting the case to Chapter 7, dismissing the case or directing the appointment of a Chapter 11 Trustee.

In support thereof, the U.S. Trustee represents as follows:

**Background**

1. On December 29, 2014, debtor 8281 Ventures, LLC (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has since acted as a debtor-in-possession pursuant to 11 U.S.C.§§ 1107 and 1108. (*See* Petition, Doc. 1.)

2. Debtor's sole asset is six (6) essentially contiguous parcels of real property

located in Slatington, Pennsylvania (the "Property"). Debtor's sole business is owning the Property.

3. Debtor acquired the Property in 2006.

4. According to Schedule A, the Property is worth $1,046,000. (*See* Sched. A., Doc. 24.)

5. The Property is burdened by one purchase money security interest in the amount of approximately $667,500 in favor of Joseph and Mary Hirsch. (*See* Sched. D., Doc. 27.) The debt secured by this lien appears to have no real terms. Debtor has never paid any of the debt, there is no monthly payment obligation, and the secured creditors have indicated that there is no set time for repayment. The secured creditors do not appear to have ever taken any action to recover the debt and have not filed a motion to lift the stay in this case.

6. Debtor describes the Property as being 17 acres improved with one large industrial building and a few small "out" buildings.

7. Although, at the meeting of creditors, Debtor's principal indicated he intends to develop the Property at some point, he has not done so since purchasing the Property in 2006.

8. The Property is subject to taxation by at least three governmental entities: the State of Pennsylvania, the local township, and the Northern Lehigh School District (the "School District"). As discussed more fully below, the taxes to the School District have never been paid since Debtor acquired the Property and the other property taxes were not paid in 2013 and 2014.

9. The Property generates no income. (*See e.g.,* Statement of Financial Affairs, Doc. 36 at questions 1 & 2.)

10. There is one tenant on the Property: Next Level Coaches LLC ("Next Level"). Next Level has no relationship (other than a landlord/tenant relationship) with Debtor or any of Debtor's principals.

11. Next Level refurbishes and repairs motorcoaches. Next Level also conducts flea markets on the Property.

12. In conducting its business, Next Level invites the public onto the Property.

13. According to testimony at the meeting of creditors, at least one of Next Level's invitees has asserted an action against Debtor for injuries sustained while on the Property, though Debtor claims it has been released from that action.

14. Pursuant to its lease, Next Level is supposed to pay Debtor $100 a year in rent. (*See* Commercial Lease Agreement, attached as Exhibit 1, at ¶ 9.) However, according to Debtor's Statement of Financial Affairs, Debtor has generated absolutely no gross income in the two years prior to commencement of this case so it appears Next Level is not actually paying the $100. (*See* Statement of Financial Affairs, Doc. 36 at questions 1 & 2.)

15. Next Level's lease also purports to require it to pay the various property taxes and to insure the Property. (*See* Ex. 1 at ¶¶ 36-37.) However, Next Level does not pay the property taxes or insure the Property.

16. In addition, Debtor does not insure the Property and indicated in the meeting of creditors that it has no intention of insuring the Property.

17. At the time Debtor acquired the Property, Debtor believed the Property was and would continue to be exempt from taxation by the School District.

18. This belief was apparently incorrect and Debtor was apparently assessed approximately $80,000 in property taxes to the School Board for the year 2007 or 2008.

19. Debtor did not pay that assessed tax and has not paid any subsequent taxes to the School District. According to Schedule E, the current tax debt to the School District is $181,404.00. (*See* Doc. 34, Sched. E.) Debtor does not dispute the amount or validity of the tax debt, however. (*See* Doc. 34, Schedule E: noting that none of its tax debts are disputed.)

20. Although Debtor initially paid its other property taxes, Debtor has not paid those property taxes since 2012 either and, thus, according to Schedule E, in addition to the School District taxes, Debtor owes $16,131 in State and township property taxes. Debtor does not dispute these tax debts either. (*See* Doc. 34, Schedule E: noting that none of its tax debts are disputed.)

21. Debtor has only $7,639 of non-insider general unsecured debt. (*See* Doc. 28, Sched. F.)

22. Debtor's largest general unsecured debt is insider debt, an alleged debt to its sole owner and principal, George P. Dausch IV. Debtor and Mr. Dausch claim that Debtor owes Mr. Dausch $129,763 for "general corporate funding." (*See* Doc. 28, Sched. F.)

23. On or about December 19, 2014, the Property was sold at tax sale to J.J.S. Land Development, LLC.

24. Although tax sale was presumably inevitable given Debtor's continued failure to pay the property taxes, Debtor's principal testified in the meeting of creditors that he was simply ignoring the notices of tax sale because the taxing authorities had previously threatened such sales and not followed through.

25. Debtor's sole purpose in filing this case is to set aside the tax sale. The grounds for doing so are unclear. At Debtor's meeting of creditors, Debtor's counsel was able to state only that he believed "procedures were not properly followed."

26. Debtor did not indicate any intent to use the bankruptcy proceeding to reorganize or repay its debts and, as discussed, *supra*, has no source of income with which to do so.

## Cause for Dismissal or Conversion

27. As described more fully below, cause exists pursuant to 11 U.S.C. § 1112(b) for the conversion of, dismissal of, or the appointment of a trustee in this case.

28. Section 1112(b) of the Bankruptcy Code generally requires that once "cause" is established the Court must take one of three actions: (1) dismiss a Chapter 11 case, (2) convert it to Chapter 7, or (3) appoint a Chapter 11 trustee. 11 U.S.C. § 1112(b); *In re Landmark Atlantic Hess Farm, LLC,* 448 B.R. 707, 712 (Bankr. D. Md. 2011). Which of the three actions should be taken is determined by the best interests of the creditors and the estate. *Id.*

29. In determining which of the three remedies is appropriate, the Court is to consider only the best interests of the creditors and the estate. The interest of the debtor

is not a factor to be considered. *Lakefront Investors, LLC, v. Clarkson*, 484 B.R. 72, 84-86 (D. Md. 2012).

30. If the moving party establishes "cause," the debtor (or other party-in-interest opposing the motion) can avoid conversion, dismissal or the appointment of a trustee only by showing:

> i. "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate";
>
> ii. a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> iii. the grounds for converting or dismissing the case include an act or omission of the debtor (a) for there exists a reasonable justification, and (b) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. 1112(b)(2).[1]

31. The Code provides 16 examples of "cause." 11 U.S.C. § 1112(b)(4). The list, however, is non-exhaustive and, thus, various non-identified acts or failure to act may also constitute cause. *In re Skeen, Goldman, LLP*, Case No. 07-10535-JS, 2007 WL 4556683 at *4 (Bankr. D. Md., Dec. 20, 2007); *In re AmeriCERT, Inc.*, 360 B.R. 398, 401 (Bankr. D.N.H. 2007).

---

[1] Where the "cause" shown is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," conversion, dismissal or appointment of a trustee is required and the exceptions set forth in this paragraph do not apply. 11 U.S.C. §1112(b)(2)(B).

**Failure to Maintain Insurance**

32.     The "failure to maintain appropriate insurance that poses a risk to the estate or to the public" constitutes "cause," pursuant to 11 U.S.C. § 1112(b)(4)(C); *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. 184, 198-99 (Bankr. D.P.R. 2014.); *In re GEL, LLC*, 495 B.R. 240, 245 (Bankr. E.D.N.Y. 2012).

33.     The Property, onto which the public is regularly invited, is not insured at all and Debtor has no intention of insuring it.  Thus, there is risk to the estate of damage to the buildings through fire or other destructive elements and risk to the estate of liability for injuries caused to the public and risk to the public of injury with no source of compensation.  Indeed, at least one action has already been asserted against the Debtor for such an injury in the past.

**No Ability to Reorganize**

34.     Section 1112(b)(4)(A) provides that cause for dismissal, conversion or the appointment of a trustee exists where there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

35.     Here, there is substantial and continuing loss to and diminution of the estate" as the tax debts continue to grow while Debtor continues to make no profitable use of the Property.  Moreover, the estate continues to remain at risk due to the lack of insurance.

36.     Meanwhile, there is absolutely no likelihood of rehabilitation or reorganization.  Debtor generates no income at all.  It has never paid its mortgage or the

School District taxes and has not been able to pay its other property taxes for at least two years.

### Gross Mismanagement of the Estate

37. "Gross mismanagement of the estate" also constitutes "cause." 11 U.S.C. § 1112(a)(4)(B).

38. Debtor has held the Property since 2006 and done nothing with it but allow it to generate losses and debts.

39. Debtor has not paid its taxes. Debtor has not insured the Property. Debtor has not made any profitable use of the Property and has leased the Property out for free instead of maximizing revenues. Additionally, despite the fact that the lease between Debtor and Next Level requires Next Level to pay both the taxes and insurance on the Property, Debtor has done nothing to enforce those obligations.

### Bad Faith

40. In addition to those actions expressly enumerated in the Code, it is well recognized that "[t]he right to file a Chapter 11 bankruptcy petition is conditioned upon the debtor's good faith -- the absence of which is cause for summary dismissal." *Maryland Port Admin. v. Premier Auto. Serv., Inc. (In re Premier Auto. Serv., Inc.)*, 492 F.3d 274, 279 (4th Cir. 2007). The purpose of this good faith requirement is to "prevent[] abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *Id.* (quoting

*In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)). The requirement "protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons [such as the automatic stay and the permanent discharge of debts] available only to those debtors ... with clean hands." *Id.* (quoting *Little Creek,* 779 F.2d at 1072).

41. Demonstrating a lack of good faith in the filing of a Chapter 11 bankruptcy petition requires a two-part showing: (i) "subjective bad faith" and (i) "objective futility." *Id.* at 279-80. The subjective test examines whether the debtor's petition is "motivated by an honest intent to effectuate reorganization or is instead motivated by some improper purpose." *Premier Auto.*, 492 F.3d at 280. Subjective bad faith is shown where the petition is filed "to abuse the reorganization process," or "to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay." *Id.* (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 702 (4th Cir. 1989)). The objective test looks to whether there is a realistic possibility of the debtor's effective reorganization. *Id.* at 280.

42. Debtor's subjective bad faith is clear. Debtor filed this case for no other reason than to set aside a tax sale that resulted from its own knowing and intentional failure to pay its taxes.

43. This case is nothing more than an attempt to hinder and delay the taxing authorities and to retain the Property despite having no intention of paying for it or its maintenance.

44. Moreover, by attempting to set aside the tax sale, Debtor is continuing to

avoid paying its debts while retaining all of its assets in contradiction of its fiduciary duties to the creditors as a debtor-in-possession.

45. Reorganization is also objectively futile in this case. Debtor's disclosed income on the Statement of Financial Affairs demonstrates no reasonable chance of reorganization. Debtor's schedules reflect nearly $200,000 in unpaid taxes. Leaving aside the fact that Debtor's inability to pay its taxes demonstrates a futile business model, Debtor's stated income is insufficient to repay those taxes in the required 5 year period of § 1129(a)(9)(C).

### Remedies

46. As discussed above, section 1112(b) requires that once "cause" is established the Court must take one of three actions: (1) dismiss a Chapter 11 case, (2) convert it to Chapter 7, or (3) appoint a Chapter 11 trustee. 11 U.S.C. § 1112(b); *Landmark Atlantic Hess Farm*, 448 B.R. at 712. Which of the three actions should be taken is determined by the best interests of the creditors and the estate. *Id*.

47. Here, the most appropriate remedy is conversion to Chapter 7. Assuming Debtor's Schedules are truthful and accurate, the Property has more than enough equity to pay off all creditors if sold, which is exactly what a Chapter 7 trustee would do.

48. Given that Debtor has not taken any steps to repay its creditors in the eight years it has owned the Property (indeed, there has not been a single mortgage payment made at all), Debtor clearly has no intent to sell the Property itself. Thus, conversion would be better for the creditors than dismissal which would leave most of Debtor's

creditors without anything at all, particularly given the tax sale.

49. The U.S. Trustee does not believe that it is appropriate for this case to remain in Chapter 11. However, if the case is allowed to remain in Chapter 11, then a Chapter 11 trustee ought to be appointed.

50. As described above, Debtor's current management has grossly mismanaged the Property and has not operated it in any manner beneficial to the creditors. *See* 11 U.S.C. § 1104(a)(1) (gross mismanagement is grounds for appointment of a trustee). Indeed, all Debtor has done with the Property (other than incur tax debt) is lease it out for free and it has refused to enforce the tenant's obligations to pay taxes or insurance.

51. Moreover, Debtor's largest general unsecured creditor is Debtor's principal and 100% owner. Assuming this debt is real, this unsecured claim held by that principal constitutes a conflict of interest, making it impossible for Debtor to carry out its fiduciary duties to the other creditors. Thus, Debtor cannot remain a debtor-in-possession.

## Local Rule 9013-2 Statement

52. The U.S. Trustee submits that no novel issue of law is presented with respect to the matters contained herein. Accordingly, pursuant to Local Bankruptcy Rule 9013-2, the U.S. Trustee is not filing a memorandum of law in support of this motion and relies solely on the grounds and authorities set forth herein.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an Order:

(1)     Granting this Motion;

(2)     Converting to Chapter 7 or in the alternative dismissing this case or directing the appointment of a Chapter 11 trustee; and

(3)     Granting such other and further relief as is just and proper.

Respectfully submitted,

Dated: February 11, 2015

Judy A. Robbins,
United States Trustee for Region Four

By: */s/ Hugh M. Bernstein*
Hugh M. Bernstein (Fed. Bar No.: 23489)
United State Department of Justice
101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-4300
E-mail: hugh.m.bernstein@usdoj.gov

-13-

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on February 11, 2015, a copy of the foregoing Motion was sent via first class mail, postage prepaid to:

8281 Ventures, LLC
P.O. Box 403
Monkton, Maryland 21111

and

Christopher Millard
6106 Buckingham Manor Drive
Baltimore, MD 21210.

According to the Court's ECF records, electronic notice of this motion should be provided to the following persons:

- Hugh M. (UST) Bernstein    hugh.m.bernstein@usdoj.gov
- Christopher Millard    cm@millardlaw.us
- US Trustee - Baltimore    USTPRegion04.BA.ECF@USDOJ.GOV

                                                  */s/ Hugh M. Bernstein*
                                                  Hugh M. Bernstein